2010 UT App 376

**STATE of Utah, Plaintiff and Appellee,**

v.

**Alex Preston NIMER, Defendant and Appellant.**

No. 20090206–CA.

Court of Appeals of Utah.

Dec. 23, 2010.

Lori J. Seppi and Heather Chesnut, Salt Lake City, for Appellant.

Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee.

Before Judges McHUGH, ORME, and THORNE.

## MEMORANDUM DECISION

McHUGH, Associate Presiding Judge:

¶ 1 Alex Preston Nimer appeals his conviction for possession of a controlled substance, *see* Utah Code Ann. § 58–37–8(2)(a)(i) (Supp. 2010).[1] Nimer claims that the trial court erred in denying his motion to suppress evidence of heroin possession because the officer lacked probable cause to arrest him and that, therefore, a subsequent search and discovery of heroin violated his Fourth Amendment rights. We affirm.

¶ 2 On August 1, 2008, an officer was dispatched to a Sportsman's Warehouse store in response to a citizen complaint of a "suspicious circumstance" involving a woman in the parking lot seen on surveillance footage in-

---

1. Because the provisions of the code applicable to this appeal have not changed, we cite to the current version of the code throughout as a convenience to the reader.

jecting herself with a syringe. When the officer arrived, he observed the woman using a syringe to inject a substance into her arm,[2] which subsequent testing identified as heroin. The officer placed the woman under arrest. At that time, a Sportsman's Warehouse employee [3] notified the officer that the woman had been observed with two men, both of whom were currently located at the front of the building. The employee identified Nimer as one of those men.

¶ 3 The officer approached the two men and asked if they had any weapons or "anything that he should know about." Nimer promptly admitted to having syringes in his pocket, some of which had uncapped needles. The officer instructed Nimer to remove the syringes from his pocket and place them on the ground. When Nimer did so, the officer observed that the syringes were identical in appearance to the syringe used by the woman and that they were not kept in any kind of medical kit. The officer concluded that the syringes were drug paraphernalia, *see id.* § 58–37a–5, and arrested Nimer. In a search of Nimer incident to the arrest, the officer seized a black sock containing seven balloons of what was later identified as heroin.

¶ 4 Nimer was charged with one count of unlawful possession of a controlled substance, *see id.* § 58–37–8(2)(a)(i), and possession of drug paraphernalia, *see id.* § 58–37a–5.[4] Nimer filed a motion to suppress the evidence, alleging that because the officer lacked probable cause to believe Nimer was engaged in criminal activity, the arrest and subsequent search were unlawful under the Fourth Amendment of the United States Constitution, *see* U.S. Const. amend. IV. The

trial court denied the motion, concluding that the officer's determination that the syringes were drug paraphernalia was reasonable and that the officer had probable cause to arrest Nimer. After the motion to suppress was denied, Nimer entered a conditional guilty plea,[5] preserving his right to appeal, *see generally State v. Sery*, 758 P.2d 935, 939 (Utah Ct.App.1988). Nimer now appeals the trial court's denial of the motion to suppress the heroin discovered during the search incident to arrest.

¶ 5 Whether the trial court erred in denying Nimer's motion to suppress is a mixed question of law and fact. We review the trial court's conclusions of law non-deferentially for correctness, *see State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699, and its factual findings for clear error, *see State v. Krukowski*, 2004 UT 94, ¶ 11, 100 P.3d 1222. However, with respect to the application of the law to the underlying facts, "we afford little discretion to the [trial] court because there must be state-wide standards that guide law enforcement and prosecutorial officials." *State v. Hechtle*, 2004 UT App 96, ¶ 8, 89 P.3d 185 (internal quotation marks omitted); *see also Salt Lake City v. Bench*, 2008 UT App 30, ¶ 5, 177 P.3d 655 ("In search and seizure cases no deference is granted to ... the [trial] court regarding the application of law to underlying factual findings." (alteration and omission in original) (internal quotation marks omitted)).

¶ 6 The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures. *See* U.S. Const. amend. IV.[6] "[W]arrantless searches are per se unreasonable unless undertaken

---

2. It appears from the record that the woman injected herself multiple times within a relatively short period of time and was observed both by employees on camera and by the officer when he responded to the scene.

3. It appears from the transcript that two employees actually talked to the police officer about what they had observed on their surveillance tape. However, the trial court's findings refer to only one employee. For purposes of our analysis, we also refer to one employee.

4. Nimer was originally charged with second degree felony possession of a controlled substance

but was bound over on third degree felony possession of a controlled substance.

5. In exchange for his guilty plea, the State dropped the drug paraphernalia charge and reduced the possession of a controlled substance charge to a class A misdemeanor.

6. The Fourth Amendment is applicable to the states pursuant to the Fourteenth Amendment of the United States Constitution. *See In re A.R.*, 937 P.2d 1037, 1040 (Utah Ct.App.1997), *aff'd*, 1999 UT 43, 982 P.2d 73.

pursuant to a recognized exception to the warrant requirement." *State v. Harker,* 2010 UT 56, ¶ 17, 240 P.3d 780 (internal quotation marks omitted). A search incident to a lawful arrest is one such exception. *See id.* Thus, if the officer lawfully arrested Nimer, the search was reasonable for purposes of the Fourth Amendment. *See id.*

¶ 7 For an arrest to be lawful, the officer must have "probable cause to believe an offense ha[s] been committed or is being committed," *State v. Johnson,* 805 P.2d 761, 763 (Utah 1991) (internal quotation marks omitted), and "a reasonable and prudent person in [the officer's] position [must have been] justified in believing that the suspect had committed the offense," *State v. Henderson,* 2007 UT App 125, ¶ 9, 159 P.3d 397 (first alteration in original) (internal quotation marks omitted). While probable cause requires more than mere suspicion, *see Hechtle,* 2004 UT App 96, ¶ 16, 89 P.3d 185, evidence sufficient to establish a conviction is not necessary, *see Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). In determining whether probable cause exists, we do not consider the facts in isolation; instead, we review the events leading up to the arrest and the totality of the circumstances in light of the officer's training and experience. *See State v. Dorsey,* 731 P.2d 1085, 1088 (Utah 1986); *Hechtle,* 2004 UT App 96, ¶¶ 10–11, 89 P.3d 185. "[T]he officer must be able to point to specific facts which, considered with rational inferences from those facts, reasonably warrant the [seizure]." *State v. Warren,* 2003 UT 36, ¶ 14, 78 P.3d 590.

¶ 8 By statute, syringes are considered drug paraphernalia when they are "used, or intended for use to parenterally [7] inject a controlled substance into the human body." Utah Code Ann. § 58–37a–3(11) (Supp.2010). Nimer alleges that the totality of the circumstances here do not support a reasonable inference that the syringes in Nimer's possession were drug paraphernalia. Nimer notes that possessing syringes is not a crime without further evidence that they are intended to be used for the injection of illegal drugs and argues that there was no evidence that the syringes were intended for such use. According to Nimer, the officer made the arrest based on nothing more than an unsupported "hunch."

¶ 9 In contrast, the State contends, based on the trial court's findings of fact and conclusions of law, that the officer had probable cause to arrest because (1) Nimer "was identified as being with [the woman] who was injecting heroin"; (2) Nimer was "in close proximity and time to" the arrested woman; (3) Nimer's prompt production of the syringes in response to the officer's inquiry "reflect[ed] a consciousness of guilt"; (4) "the syringes he had were identical in appearance to the syringe [the woman] was using"; (5) the officer knew that people who inject drugs legally, such as diabetics, typically store their needles and syringes in a kit with medicine; and (6) the officer had over two years of experience seeing drugs and/or drug paraphernalia on a weekly basis.

¶ 10 Because hypodermic needles and syringes have legitimate medical purposes, Nimer is correct that mere possession does not establish probable cause that they are drug paraphernalia. *See Baggett v. State,* 562 So.2d 359, 362 (Fla.Dist.Ct.App.1990) ("Hypodermic syringes have legitimate medical purposes so that in every instance they cannot be said to constitute drug paraphernalia. . . ."). Nevertheless, the Utah Code identifies several factors relevant to a "trier of fact" in "determining whether an object is drug paraphernalia," including "the proximity of the object, in time and space, to a direct violation of [the Utah Drug Paraphernalia Act]," Utah Code Ann. § 58–37a–4(3) (2008); "the proximity of the object to a controlled substance," *id.* § 58–37a–4(4); "statements by an owner or by anyone in control of the object concerning its use," *id.* § 58–37a–4(1); and "the existence and scope of legitimate uses of the object," *id.* § 58–37a–4(12). Because we find these statutory factors helpful in determining whether the officer's conclu-

---

7. "Parenteral" means "injected . . . subcutaneously, intramuscularly, or intravenously." *Web-* *ster's Third New International Dictionary* 1641 (1986).

sion that the syringes were drug paraphernalia was supported by probable cause, we consider each in turn.[8]

¶ 11 We begin by considering the proximity of Nimer's syringes to a drug paraphernalia violation or to a controlled substance. Although "mere presence in an area suspected to harbor drug activity does not give rise to reasonable suspicion that [a defendant] was engaged in such activity," *State v. Sykes,* 840 P.2d 825, 829 (Utah Ct.App.1992), the legislature has determined that proximity, in "time and space," to a drug violation is a factor in determining whether an item is drug paraphernalia, *see* Utah Code Ann. § 58–37a–4(3), (4) (providing that "proximity, in time and space" to a violation of drug paraphernalia laws and "proximity of the object to a controlled substance" are relevant factors in determining whether an object is drug paraphernalia).

¶ 12 While the information given to police about Nimer's interaction with the woman was not specific, the circumstances surrounding the report support a reasonable inference that Nimer's contact with the woman was recent and suspicious. The employee reported that the woman had been observed on a security camera and that she was injecting herself with heroin. It is well-settled that police can rely on external information, such as information from a witness, in making a probable cause determination. *See, e.g., State v. Alverez,* 2006 UT 61, ¶ 17, 147 P.3d 425 (noting that a reliable tip can be the basis for reasonable suspicion to detain or stop); *Kaysville City v. Mulcahy,* 943 P.2d 231, 234 (Utah Ct.App.1997).[9] However, Nimer contends that because the employee did not indicate exactly when, where, or how long the woman and Nimer were seen together or whether their interaction was suspicious, the officer could not reasonably infer that Nimer was involved in the woman's drug use. We disagree. When the officer arrived, the woman was still injecting herself, thereby corroborating the tip received from the employee. *See generally Mulcahy,* 943 P.2d at 235–36 (including corroboration by police observation as a factor relevant to determining weight to be given a witness report or tip). The employee's further indication that Nimer and his companion had been with the woman and were still at the location leads to the reasonable inference that the men were observed on camera in close proximity in space with the woman shortly before the officer arrived. Because the woman was still injecting drugs when the officer arrived, it was also reasonable to infer that Nimer's interaction with the woman was in close temporal proximity to her drug use.

¶ 13 We next consider Nimer's statements to the officer. The trial court found that Nimer's prompt response to the officer's inquiry about possession of "weapons or anything [he] should know about" reflected a "consciousness of guilt" and was "an admission that ... Nimer's possession of the needles was not innocent." However, we are not convinced that Nimer's declaration that he was carrying the syringes was necessarily an admission of guilt. Although "statements by an owner [of an] object concerning its use" are relevant to the determination of whether the item is drug paraphernalia, *see* Utah Code Ann. § 58–37a–4(1), Nimer's response to the officer does not explicitly concern the "use" of the needles, *see id.* Rather, his revelation that he had uncapped needles in his pocket may have been motivated by concern for the officer's safety and a logical response to the officer's query of whether there was anything the officer "should know about." *See generally State v. Hechtle,* 2004 UT App 96, ¶ 14, 89 P.3d 185 ("[H]elpfulness ... does not, normally, qualify as an indicia of criminal behavior....").

¶ 14 Nimer also contends that the reasonableness of the officer's determination of probable cause is undermined because there are many legitimate uses for needles

8. Furthermore, both parties address these statutory factors as support for their probable cause arguments.

9. While both of these cases deal with informants' tips in the context of reasonable suspicion for an investigatory stop or detention, "the same totality of facts and circumstances approach is used" to determine both probable cause and reasonable suspicion. *Kaysville City v. Mulcahy,* 943 P.2d 231, 234 (Utah Ct.App.1997) (internal quotation marks omitted).

and syringes, *see* Utah Code Ann. § 58–37a–4(12) (providing that "the existence and scope of legitimate uses of the object" are relevant in determining whether the item is drug paraphernalia). At Nimer's hearing, the defense entered statistical data into evidence indicating that there are 9,972 insulin-dependent diabetics in Salt Lake County. While we agree that there are legitimate uses for needles and syringes, the circumstances present in this case do not convince us that the officer unreasonably believed that Nimer's use was illegal. "The presence of commonplace items that would not arouse suspicion in a lay person may support probable cause for a law enforcement officer when, in light of the circumstances and based on his experience and training, the items reasonably indicate a relation to illegal activity." *State v. Griffith,* 2006 UT App 291, ¶ 7, 141 P.3d 602. Even considering the nearly 10,000 diabetics legitimately using syringes and needles in Salt Lake County, the totality of the circumstances here was supportive of the officer's probable cause determination. *Cf. id.* ¶ 8 (upholding probable cause determination where vehicle occupants had a rolled dollar bill and a butane lighter because, while these were "common items with legal uses," the officer's inference that they were related to illegal activity was reasonable where the occupants were parked in an isolated area, the officer knew the items were commonly used as drug paraphernalia, the occupants tried to hide the items, and their travel plans were suspect).

¶ 15 When Nimer removed the syringes from his pocket, the officer noticed that they were not accompanied by medicine or a kit, which the officer testified is atypical when someone is carrying needles for a legitimate medical purpose. In addition, the officer observed that Nimer's syringes were identical in appearance to the syringe used to inject heroin by the woman the officer had just arrested on the same premises. That information, combined with the employee's report that Nimer had been with the woman and that Nimer was still present at the store,

supports the officer's reasonable belief that Nimer's syringes were not for legitimate use.

¶ 16 Finally, Nimer challenges the trial court's denial of the motion to suppress on the ground that the officer's limited experience and lack of special training with respect to narcotics identification rendered him incompetent to determine whether the items were drug paraphernalia. In support, Nimer relies on *State v. Hechtle,* 2004 UT App 96, 89 P.3d 185, where we noted that the trooper who made the arrest was not a drug recognition examiner trained in the identification and detection of drug use. *See id.* ¶ 13 n. 3. Notably, the issue in *Hechtle* was whether there was reasonable suspicion that the defendant, who was the subject of a traffic stop for a violation unrelated to his operation of the vehicle, was under the influence of drugs. *See id.* ¶¶ 2–5. The *Hechtle* court was concerned that the officer had relied on a factor that had no known connection with marijuana use. *See id.* ¶¶ 13, 15 ("[W]e are troubled by the trooper's reliance on the appearance of [the defendant's green] tongue as dispositive proof of marijuana use."). In contrast, the issue here was whether the officer had probable cause to believe Nimer's syringes were drug paraphernalia.[10] Although the officer had not undergone special narcotics training, he had over two years experience with the Midvale Police Department and Salt Lake County Protective Services, during which he encountered drugs and drug paraphernalia on a weekly basis. The officer's lack of formal training as a drug recognition expert does not render unreasonable his belief that Nimer's syringes and needles were "intended for use to parenterally inject a controlled substance," *see* Utah Code Ann. § 58–37a–3(11) (Supp.2010).

¶ 17 Based on the totality of the circumstances, a reasonable person in the officer's position, in light of his experience, could have objectively concluded that the syringes were drug paraphernalia. Therefore, the officer had probable cause to arrest Nimer and

---

10. Nimer further argues that there was no probable cause because he exhibited no signs of recent drug use. However, nothing in Utah Code section 58–37a–5 requires drug paraphernalia to have been recently used or a defendant to be impaired. *See* Utah Code Ann. § 58–37a–5 (Supp.2010).

the search incident to that lawful arrest did not violate Nimer's Fourth Amendment right against unreasonable search and seizure. Consequently, the trial court did not err in denying Nimer's motion to suppress.

¶ 18 Affirmed.

¶ 19 WE CONCUR: GREGORY K. ORME, and WILLIAM A. THORNE JR., Judges.