2013 UT App 113

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
*Plaintiff and Appellee,*

*v.*

ALI ALI,
*Defendant and Appellant.*

Memorandum Decision
No. 20111051-CA
Filed May 2, 2013

Third District, Salt Lake Department
The Honorable Denise P. Lindberg
No. 101902146

Phillip W. Dyer and B. Kent Morgan, Attorneys for
Appellant
John E. Swallow and Brett J. DelPorto, Attorneys
for Appellee

JUDGE WILLIAM A. THORNE JR. authored this Memorandum
Decision, in which JUDGES GREGORY K. ORME and
MICHELE M. CHRISTIANSEN concurred.

THORNE, Judge:

¶1     Ali Ali appeals from his convictions on one count of
distributing or arranging to distribute a controlled substance, a first
degree felony, *see generally* Utah Code Ann. § 58-37-8 (LexisNexis
2012), and one count of providing false information to a peace
officer with the intent of leading the officer to believe that the
person providing the information is another actual person, a class
A misdemeanor, *see generally id.* § 76-8-507(2). We affirm.

¶2     Ali first argues that an undercover detective's eyewitness
testimony identifying Ali as the person who sold him crack cocaine

was so unreliable as to constitute insufficient evidence for conviction on the controlled substance distribution count. Ali identifies multiple factors that, he argues, reduce the reliability of the detective's identification testimony. Among these factors are the short duration of the drug transaction, the poor lighting conditions, the distracting presence of another drug dealer known to the detective, and the fact that the detective and Ali are of different races. *See generally State v. Clopten*, 2009 UT 84, ¶ 15, 223 P.3d 1103 ("[P]eople identify members of their own race with greater accuracy than they do members of a different race. In addition, accuracy is significantly affected by factors such as the amount of time the culprit was in view, lighting conditions, use of a disguise, distinctiveness of the culprit's appearance, and the presence of a weapon or other distractions."(footnote omitted)). Ali also points to discrepancies between the detective's testimony and that of the uniformed officer who arrested Ali approximately one hour after the transaction.

¶3     We will reverse a jury verdict for insufficiency of the evidence only when the evidence "is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt." *State v. Boss*, 2005 UT App 520, ¶ 9, 127 P.3d 1236 (citation and internal quotation marks omitted). When reviewing the sufficiency of the evidence, we "may not reassess credibility or reweigh the evidence," *State v. Workman*, 852 P.2d 981, 984 (Utah 1993), and must accept the jury's determination of witness credibility unless the witness's testimony is "inherently improbable," *State v. Robbins*, 2009 UT 23, ¶ 16, 210 P.3d 288.

¶4     We see nothing inherently improbable in the detective's testimony that Ali was the person who sold him drugs. *See id.* ¶¶ 17–18 (explaining that "inherently improbable" testimony is testimony that is "physically impossible" or "incredibly dubious and, as such, apparently false"). The detective had the opportunity to observe Ali face-to-face during the drug transaction. Ali was arrested nearby shortly thereafter, wearing distinctive clothing matching that initially described by the detective when he radioed

Ali's description to the uniformed officers supporting the undercover operation. Additionally, Ali was sharing a hotel room with another individual who had arranged the drug transaction between Ali and the detective. In light of these factors, nothing about the detective's identification of Ali was either "physically impossible" or "incredibly dubious." *See id.*

¶5 At trial, Ali was allowed to present expert testimony regarding the detective's eyewitness identification. *See Clopten*, 2009 UT 84, ¶ 30 ("[T]he testimony of a qualified expert regarding factors that have been shown to contribute to inaccurate eyewitness identifications should be admitted whenever it meets the requirements of rule 702 of the Utah Rules of Evidence."). Ali's expert testified that some factors, such as the lighting and duration of the drug transaction, reduced the reliability of the detective's identification. But he also identified other factors, such as the short period of time between the drug transaction and the detective's identification of Ali to the arresting officers, that enhanced the reliability of the identification. We agree with the State that the "jurors were extensively schooled by [Ali's expert] in the limitations of eyewitness identification and chose, nonetheless, to believe the [detective's] testimony." In addition to the expert's testimony, the district court also gave the jury a so-called *Long* instruction identifying factors that can affect the reliability of eyewitness testimony. *See State v. Long*, 721 P.2d 483, 492–95 (Utah 1986) (discussing the requirements of an effective eyewitness testimony instruction).[1]

---

1. In *State v. Clopten*, 2009 UT 84, 223 P.3d 1103, the supreme court determined that a *Long* instruction is not required when a defendant is allowed to present expert testimony on the issue of eyewitness testimony, at which point "the inclusion of a cautionary instruction, if requested, is a matter for the trial judge's discretion." *See id.* ¶ 34. We approve of the district court's decision to include a *Long* instruction in this case, and we encourage the continued

(continued...)

¶6      In sum, the detective's identification of Ali was not inherently improbable, and the jury was informed of the pitfalls of eyewitness identifications by both Ali's expert and the *Long* instruction. Nevertheless, the jury apparently chose to believe the detective's testimony that Ali was the person who had sold him drugs. Under these circumstances, we will not disturb the jury's verdict based on insufficiency of the evidence.

¶7      Ali's remaining arguments pertain to his conviction of providing false information to a peace officer with the intent of leading the officer to believe that he was another actual person. On the day prior to trial, the State informed the district court that the false information charge would have to be dismissed because the officer who heard Ali identify himself as Mudi Hussein and subsequently found an identification card bearing Hussein's name in Ali's hotel room was unavailable to testify due to the officer's military deployment in Afghanistan. The next day, the State informed the court that it had been mistaken as to the officer's unavailability and asked the court to reinstate the charge. The court reinstated the charge, reasoning that it had only been dismissed the day before and that Ali would suffer no prejudice because he was presumably already prepared to defend against it. There is no suggestion in the record that Ali objected to or otherwise challenged the district court's reinstatement decision.

¶8      On appeal, Ali argues that the district court's decision to reinstate the charge violated rule 4(d) of the Utah Rules of Criminal Procedure as well as his due process rights. *See generally* Utah R. Crim. P. 4(d) ("The court may permit an information to be amended at any time before trial has commenced so long as the substantial rights of the defendant are not prejudiced."); *In re Worthen*, 926 P.2d 853, 876–78 (Utah 1996) (discussing the minimum

---

1. (...continued)
discretionary use of such instructions in eyewitness identification cases.

requirements of due process). However, we do not consider these arguments because Ali waived them when he failed to object to the district court's ruling and did not raise his procedural and due process concerns with the district court. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("Issues that are not raised at trial are usually deemed waived."); *State v. Johnson*, 2006 UT App 3, ¶ 13, 129 P.3d 282 ("One who fails to make a necessary objection or who fails to ensure that it is on the record is deemed to have waived the issue." (citation and internal quotation marks omitted)).[2]

¶9      Ali also argues that the district court erred when it allowed the State to prove the crime's "actual person" and "another person" elements with hearsay testimony about an identification card that had been found in Ali's hotel room after his arrest. *See* Utah Code Ann. § 76-8-507(2) (LexisNexis 2012). Subsection 76-8-507(2) of the Utah Code provides,

> A person commits a class A misdemeanor if, with the intent of leading a peace officer to believe that the person is another actual person, he gives the name, birth date, or address of another person to a peace officer acting in the lawful discharge of the peace officer's official duties.

---

2. We reject the State's argument that Ali invited any error by the district court. Although Ali's failure to object to the reinstatement on the record constitutes a waiver, it does not amount to invited error. Invited error requires some affirmative representation to the court, and there is no indication that such a representation occurred here. *See State v. Brooks*, 2012 UT App 34, ¶ 14, 271 P.3d 831 ("[R]eview under the plain error doctrine is not available when counsel invites the error by *affirmatively representing* to the district court that there is no objection to the proceedings." (emphasis added)).

*Id.* Ali was charged under this subsection after he initially identified himself to the arresting officer as Mudi Hussein. In a subsequent search of the hotel room shared by Ali, officers found what they later described as a "consulate identification" card bearing the name Mudi Hussein. The identification card had a photograph of a man who was not Ali. However, the officers did not retain the identification card, and the State did not present it at trial. Rather, the officer who discovered the identification card was allowed to describe it to the jury over Ali's hearsay objection.

¶10    On appeal, Ali renews his hearsay argument that the officer's testimony went to the "truth of the matter asserted" by the identification card, apparently referring to the question of whether Mudi Hussein was the actual name of the person pictured on the identification card. We need not resolve this hearsay question,[3] however, because under the rather unique factual circumstances of this case, there was no need for the jury to assess whether or not the identification card validly identified Mudi Hussein.

---

3. Ali's entire hearsay analysis on appeal consists of the single sentence, "Mr. Ali's counsel properly objected to [the officer's] testimony on hearsay grounds, as [that] testimony clearly went to the truth of the matter asserted and thus should have been excluded/stricken from the record." This constitutes inadequate briefing of the hearsay issue and presents an additional basis for our decision. *See* Utah R. App. P. 24(a)(9) (establishing the requirements of appellate brief arguments). The hearsay section of Ali's appellate brief also contains an argument that the identification card constituted exculpatory evidence under *California v. Trombetta*, 467 U.S. 479 (1984), but Ali has failed to demonstrate that he preserved this issue for appeal by presenting it first to the district court. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 ("As a general rule, claims not raised before the trial court may not be raised on appeal."). Accordingly, we decline to address it.

¶11    The identification card was found in Ali's hotel room. It is a reasonable inference that when Ali identified himself to the officer as Mudi Hussein, he was referring to the person pictured on the identification card and intended the officer to believe that he was, in fact, that person. There is no dispute that the photograph on the identification card depicted an actual person who was not Ali and that the identification card associated that photograph—correctly or incorrectly—with the name Mudi Hussein. Thus, there is nonhearsay evidence to support the jury's conclusion that Ali gave the officers the name of another person, Mudi Hussein, with the intent of leading the officer to believe that Ali was the actual person depicted on the identification card.[4]

¶12    For all of these reasons, we decline to disturb Ali's convictions and affirm the district court's judgment.

———————

4. Ali makes no argument that, under Utah Code section 76-8-507(2), the "name . . . of another person" given to an officer must actually be the name of the "[]other actual person" being impersonated. *See* Utah Code Ann. § 76-8-507(2) (LexisNexis 2012).