2019 UT App 99

# THE UTAH COURT OF APPEALS

BURRIS WOLLSIEFFER,
Appellant,
*v.*
HEATHER WOLLSIEFFER,
Appellee.

Opinion
No. 20170645-CA
Filed June 6, 2019

Third District Court, Salt Lake Department
The Honorable Matthew Bates
No. 154905336

Burris Wollsieffer, Appellant Pro Se

Courtney Cooper, Ryan A. Rudd, and Bruce M.
Pritchet Jr., Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and JILL M. POHLMAN
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Burris Wollsieffer (Father) petitioned for modification of the parties' settlement agreement and the Illinois judgment dissolving their marriage. Heather Wollsieffer (Mother) moved the court to hold Father in contempt for his refusal to comply with certain terms of that judgment. After a bench trial, the trial court found Father in contempt for his failure to satisfy his child support obligations and awarded Mother the attorney fees she incurred in her enforcement proceeding. The court also modified Father's child support obligations. Father appeals. We affirm and remand to the trial court for a determination of Mother's attorney fees reasonably incurred on appeal.

BACKGROUND

¶2    Father and Mother divorced in Illinois in 2013. They entered into a settlement agreement, and based upon that agreement, an Illinois court issued a judgment (Illinois Divorce Judgment) awarding Mother sole custody of the parties' children, subject to Father's parent-time. Based on his income, the court ordered Father to pay $935.85 as child support every two weeks. Moreover, the Illinois court directed Father to provide additional child support in the amount of 32% of any net bonuses and any income earned in excess of his annual income used for calculating child support (Additur Provision). The Illinois Divorce Judgment required each party to pay one-half of the daycare expenses for the children. When the decree was entered, the parties were living in different states. They anticipated daycare expenses of $2,000 per month, due in part to Mother's work-related travel. In the settlement agreement, the parties acknowledged that Mother planned "to move to the state of California" with the children, and Father, who resided in South Dakota at the time, was "moving to Florida."

¶3    In 2015, both parties briefly resided in Utah and Father registered the Illinois Divorce Judgment with the Utah court. In August 2015, Father petitioned for modification of the Illinois Divorce Judgment, alleging that a substantial and material change in circumstances justified altering the existing orders. Father primarily sought a reduction in his child support obligation, but he also requested that the court "make equitable orders regarding parent time and award [Father] statutory parent time" because Mother had allegedly been interfering with his parent-time. Father served Mother with the petition to modify in October 2015.

¶4    Mother moved to dismiss Father's petition, arguing that Father had failed to establish a substantial and material change

in circumstances that would support modification of his child support obligation and the parent-time provisions of the Illinois Divorce Judgment. The court agreed with Mother that the parent-time provisions of Father's petition to modify should be dismissed but denied Mother's motion to dismiss with respect to the modification of the child support provisions. Mother also filed an order to show cause alleging that Father had failed to stay current on child support and daycare expenses as ordered by the Illinois Divorce Judgment. The parties proceeded to trial in April 2017 on these issues.

¶5 After hearing testimony and reviewing the evidence offered at trial, the court determined that both parties' incomes had materially increased and that the change in incomes justified a modification of the Illinois Divorce Judgment. Although the parties' incomes had both increased, Father's child support obligation, calculated pursuant to the Utah child support guidelines, changed only minimally. The trial court ordered that child support be paid monthly rather than every other week and eliminated the original 32% Additur Provision from the Illinois Divorce Judgment. Lastly, the court ordered the modification to apply retroactively beginning January 1, 2016. In fixing this date, the court reasoned that the children lived in Utah for only the latter part of 2015 and that they should therefore benefit from the Illinois Divorce Judgment's Additur Provision for that year.

¶6 Among other evidence presented at trial, each party offered an exhibit detailing the payments Father had made for child support and daycare expenses since the Illinois Divorce Judgment was entered in 2013. Relying on Mother's exhibit, the trial court determined that Father failed to pay $1,401.08 in past-due child support and $5,520 in daycare expenses. For Father's refusal to comply with the Illinois Divorce Judgment and meet these obligations, the trial court held Father in contempt. The trial court further determined that Father received income in 2015 above the Additur Provision's threshold,

triggering his obligation to pay an additional amount of child support for that year. Pursuant to the terms of the Illinois Divorce Judgment, the trial court concluded that 32% of Father's excess 2015 income—calculated to be approximately $10,000 over the threshold—should have been directed to the parties' children in the form of additional child support. Because Father provided no child support under the Additur Provision for 2015, the court found Father in contempt and ordered him to pay $3,205 in unpaid additional child support. In total, the court found that Father was $10,126 in arrears.

¶7      Each party requested an award of attorney fees at the end of trial. The trial court denied Father's request for fees for his modification action because he was not impecunious. *See Davis v. Davis*, 2011 UT App 311, ¶ 22, 263 P.3d 520 ("To recover costs and attorney fees in proceedings on a petition to modify a divorce decree, the requesting party must demonstrate his or her need for attorney fees, the ability of the other spouse to pay, and the reasonableness of the fees." (quotation simplified)); *see also* Utah Code Ann. § 30-3-3(1) (LexisNexis Supp. 2018). However, the court identified two other statutory bases supporting an award of attorney fees in this action: the contempt statute, *see generally id.* §§ 78B-6-311 to -317 (LexisNexis Supp. 2018), and Utah Code section 30-3-3(2), which authorizes an award of attorney fees and costs in any action to enforce an order of child support to the party that "substantially prevailed upon the claim or defense." Concluding that Mother "prevailed on her enforcement action," the court awarded her attorney fees, but limited that award specifically to counsel's time spent on the portion of the litigation focused on successfully proving Father's contempt. Supporting this conclusion, the trial court observed that Mother "filed an order to show cause in which she alleged that [Father] was delinquent in his existing support obligations" and that the court "held [Father] in contempt for failing to comply with the existing support order." The trial court also noted that "some of [Mother's] enforcement efforts were

unsuccessful," particularly her argument that "[Father's] income was much higher than he was claiming."

¶8 Considering Mother's counsel's affidavit and supporting documents, including a detailed explanation of work performed and billing rates, the trial court ultimately awarded Mother $12,300 in enforcement-related attorney fees.

ISSUES AND STANDARDS OF REVIEW

¶9 Father appeals.[1] He first contends that the trial court erred when it determined that Mother substantially prevailed on her

---

1. Father asserts a total of six issues on appeal. We address the merits of two of those issues and discuss Father's two unpreserved issues in the body of the opinion. Father's remaining arguments are discussed below: Father argues that the trial court should have credited him with alleged child support overpayments made "shortly before" entry of the Illinois Divorce Judgment. He also contends that the trial court erred when it dismissed his petition to modify the parent-time provisions of the Illinois Divorce Judgment. Because Father cites no supporting authority and offers no reasoned analysis on either of these issues, we conclude that he has inadequately briefed them and we do not consider them further. *See* Utah R. App. P. 24(a)(8) (requiring an appellant to "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal"). As a self-represented party, Father is entitled to "every consideration that may reasonably be indulged," *Allen v. Friel*, 2008 UT 56, ¶ 11, 194 P.3d 903 (quotation simplified), though "we will ultimately hold him to the same standard of knowledge and practice as any qualified member of the bar," *Robinson v. Jones Waldo Holbrook & McDonough, PC*, 2016 UT App 34, ¶ 28, 369 P.3d 119.

(continued…)

motion to enforce the Illinois Divorce Judgment and therefore erred in awarding her the attorney fees she incurred.[2] "The decision to award or deny attorney fees in domestic cases is within the [trial] court's sound discretion, and we will disturb the decision only if the [trial] court abuses that discretion." *Gore v. Grant*, 2015 UT App 113, ¶ 11, 349 P.3d 779. Moreover, we "review the trial court's determination as to who was the prevailing party under an abuse of discretion standard," *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119, but the trial court's "interpretation of a statute is a question of law that we review for correctness," *Stephens v. Stephens*, 2018 UT App 196, ¶ 20, 437 P.3d 445 (quotation simplified). We will reverse a trial court's award of attorney fees if it fails to provide adequate findings of fact. *Anderson v. Anderson*, 2018 UT App 19, ¶ 22, 414 P.3d 1069.

---

(…continued)

Father's remaining claims of error—the trial court's selection of a date to retroactively apply the modified divorce decree and its allegedly incorrect interpretation of the Additur Provision in the Illinois Divorce Judgment—are discussed in Part III of this opinion. But our conclusion that these issues were not preserved for appellate review obviates the need to recite the standards of review that would otherwise apply to those issues. *See Cheek v. Clay Bulloch Constr. Inc.*, 2016 UT App 227, ¶ 14 n.3, 387 P.3d 611.

2. Father contends that the trial court "incorrectly interpreted" Utah Code section 30-3-3(2) when it awarded attorney fees to Mother. Although seemingly framing this issue as one of statutory interpretation, Father challenges only the trial court's factual determination that Mother prevailed on her petition to enforce the Illinois Divorce Judgment. We accordingly limit our review to this question.

¶10    Father also contends that the trial court erred by miscalculating his arrearages under the Illinois Divorce Judgment for his share of the children's expenses. Specifically, Father contends that the trial court overlooked overpayments he allegedly made between October 2013 and July 2015. We review the trial court's factual findings for clear error. *Kimball v. Kimball*, 2009 UT App 233, ¶ 14, 217 P.3d 733.

¶11    Finally, both parties seek attorney fees on appeal. "Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." *Osguthorpe v. Osguthorpe*, 872 P.2d 1057, 1059 (Utah Ct. App. 1994) (quotation simplified).


ANALYSIS

I. Award of Attorney Fees

¶12    Father argues that the trial court abused its discretion when it awarded attorney fees to Mother and when it fixed the amount of that award. We conclude that the trial court sufficiently supported its decision to award attorney fees to Mother and that the court did not exceed its discretion in fixing the amount of that award.

¶13    Utah Code section 30-3-3(2) authorizes an award of costs and attorney fees "[i]n any action to enforce an order of custody, parent-time, child support, alimony, or division of property in a domestic case" upon the court's determination "that the party substantially prevailed upon the claim or defense." Utah Code Ann. § 30-3-3(2) (LexisNexis Supp. 2018); *see also Gore v. Grant*, 2015 UT App 113, ¶ 25, 349 P.3d 779 ("When a fee request is made in an order-enforcement proceeding, . . . the guiding factor is whether the party seeking an award of fees substantially prevailed on the claim." (quotation simplified)). Fees awarded

under subsection (2) "serve no equalizing function but allow the moving party to collect fees unnecessarily incurred due to the other party's recalcitrance." *Connell v. Connell*, 2010 UT App 139, ¶ 30, 233 P.3d 836. In other words, when one party refuses to comply with a court order, thereby compelling another party to seek its enforcement, that party risks liability for the fees and costs accrued in the enforcement proceeding. *See, e.g., Tribe v. Tribe*, 202 P. 213, 216 (Utah 1921) (observing that if a party "refuses to comply with the decree, he does so at his peril").

¶14    Here, Mother filed an order to show cause alleging that Father had failed to provide child support and other expenses as required by the Illinois Divorce Judgment, which collectively amounted to more than $60,000. The trial court ultimately agreed with Mother, in part, and found Father in contempt because, despite knowing of his support obligations, he willingly disobeyed the terms of the Illinois Divorce Judgment. The court determined that Father failed to pay $1,401 in base child support, $3,205 in additional child support under the Additur Provision, and $5,520 in daycare expenses. In total, the trial court found Father to be more than $10,000 in arrears as a result of unpaid obligations under the Illinois Divorce Judgment.

¶15    Considering Mother's request for an award of attorney fees, the trial court observed that Mother sought to enforce the provisions of the Illinois Divorce Judgment.[3] And the court

---

3. We note that both parties requested an award of attorney fees following trial. The trial court determined that neither party was eligible for such an award with respect to the petition to modify because "neither side is impecunious" and both "have the ability to pay their own fees." *See* Utah Code Ann. § 30-3-3(1) (LexisNexis Supp. 2018) (authorizing an award of attorney fees and costs in divorce decree modification proceedings in order "to enable the other party to prosecute or defend the action");

(continued…)

concluded that Mother ultimately "prevailed on her enforcement action" based on the court's determination that Father was "in contempt for failing to comply with the existing support order." Included in the trial court's findings regarding why Mother prevailed, the court refers to its earlier findings and conclusions in which it resolved both Mother's enforcement motion and Father's petition to modify. It observed that Mother "filed an order to show cause in which she alleged that [Father] was delinquent in his existing support obligations." The trial court also noted that "some of [Mother's] enforcement efforts were unsuccessful," particularly her argument that "[Father's] income was much higher than he was claiming."

¶16 Mother claimed that Father refused to pay his share of child support and other expenses as required by the Illinois Divorce Judgment. As a result, Mother asserted she was left to "bear [these] costs" of supporting the parties' children "alone." She therefore sought the court's assistance in enforcing the terms of the then-existing order. The trial court ultimately found Father in contempt for his refusal to meet his obligations to his children, including providing base child support, additional child support under the Additur Provision, and daycare expenses.

¶17 Father successfully argued that the amount of additional child support required under the Additur Provision—a support amount he nevertheless refused to provide—was significantly

---

(…continued)

*see also Wilde v. Wilde*, 969 P.2d 438, 444 (Utah Ct. App. 1998) (requiring that the award of attorney fees in modification proceedings "be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees" (quotation simplified)). Neither party challenges this aspect of the trial court's decision.

less than the amount Mother asserted in her order to show cause. Father thus argued below that he substantially prevailed, but the trial court concluded that Mother substantially prevailed because she won on her contempt claims. On appeal, Father argues that because Mother did not receive 51% or more of the amount she alleged Father failed to provide in child support, Mother did not substantially prevail on her claims. But Father cites no authority to support his contention. And without more, we are unpersuaded that Mother, who successfully proved Father's contempt, did not substantially prevail within the meaning of section 30-3-3(2) simply because she recovered less than half of what she sought in child support payments. Accordingly, we discern no abuse of the trial court's discretion in determining that Mother should be awarded attorney fees for her efforts to enforce the terms of the Illinois Divorce Judgment.[4]

¶18    Father also challenges the amount of the attorney fees the trial court awarded to Mother. In fixing the amount of reasonable attorney fees, a trial court should generally consider (1) the legal work that was "actually performed," (2) the amount of work that was "reasonably necessary to adequately prosecute the matter," (3) the attorney's billing rate and whether it is "consistent with the rates customarily charged in the locality for similar services," and (4) any other relevant factors, "including those listed in the Code of Professional Responsibility." *Dixie*

---

4. The court also noted that it was authorized to award Mother her attorney fees "as a remedy for [Father's] contempt." (Citing Utah Code section 78B-6-311.) But on appeal, Father does not challenge this ruling. Father's failure to do so provides this court with an alternative basis to affirm the trial court's award of attorney fees to Mother. *See Kendall v. Olsen*, 2017 UT 38, ¶ 12, 424 P.3d 12 ("We will not reverse a ruling of the [trial] court that rests on independent alternative grounds where the appellant challenges only one of those grounds." (quotation simplified)).

*State Bank v. Bracken*, 764 P.2d 985, 990 (Utah 1988). Here, Mother submitted the billing invoices from her attorneys documenting the amount of fees she had incurred and counsel's declaration attesting to the time spent, billing rates, and description of the work performed.[5]

¶19 Counsel's billing statements to Mother included the fees charged for work performed prior to Mother's filing of the order to show cause. And separately described and accounted for the work performed in responding to Father's petition to modify the Illinois Divorce Judgment and on Mother's motion to enforce the terms of the then-in-effect judgment. To limit Mother's award of attorney fees to her "efforts to enforce the existing decree," the trial court reduced Mother's requested fees to only those incurred in litigating Mother's motion to enforce the orders of the Illinois Divorce Judgment. The court also took into consideration the fact that some of Mother's enforcement efforts were ultimately unsuccessful.

¶20 Considering the hours Mother's counsel spent litigating her order to show cause all the way through trial,[6] the trial court

5. Father asserts that the trial court "did not explain [the court's] basis and numbers used . . . with detailed evidence" when it calculated the amount of the attorney fees awarded to Mother. The court, however, explained that it "carefully review[ed] counsel's records," which included the detailed billing statements that Mother's counsel attached to their declaration of attorney fees in which counsel attested to the work performed, time spent, and rates charged. And the court explained which categories of fees it disallowed and the specific number of hours it found reasonable.

6. The trial court included one-half of the total hours counsel billed for trial.

determined that the time spent and the billing rates of counsel were reasonable in light of their experience. The court therefore awarded Mother $12,300 for the fees she incurred specifically litigating the enforcement action. Our review of the record and the court's findings reveals no abuse of the trial court's discretion in calculating reasonable attorney fees. We accordingly affirm the trial court's award of attorney fees to Mother and affirm its calculation of the amount of that award.

## II. Calculation of Daycare Expenses

¶21    Father next argues that the trial court overlooked overpayments Father allegedly made with respect to his daycare expense obligations between October 2013 and July 2015.

¶22    Due to the parties' living in different states and work-related travel, the parties' Illinois Divorce Judgment obligated each parent to provide $1,000 per month toward daycare expenses for their children. During trial, each party submitted an exhibit summarizing, among other things, receipts for daycare expense payments. When Father moved for admission of his own exhibit, Mother objected, arguing that the calculations in his exhibit were unclear and asserting that his calculations included irrelevant information. During cross-examination, Father stated that he had not prepared a portion of his exhibit and therefore could not testify to its accuracy. Mother subsequently submitted her own exhibit, which documented all child support and daycare expense amounts provided by Father following entry of the Illinois Divorce Judgment. Father later submitted a substitute exhibit, and Mother withdrew her objection. Relying on Mother's exhibit, the trial court determined that Father had failed to meet his daycare-related obligations under the Illinois Divorce Judgment and was $5,520 in arrears.

¶23    On appeal, Father asks this court to consider the evidence presented at trial and reach a different finding. "When reviewing

a [trial] court's findings of fact on appeal, we do not undertake an independent assessment of the evidence presented during the course of trial and reach our own separate findings with respect to that evidence." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 75, 99 P.3d 801. Instead, we "evaluate whether the court's findings are so lacking in support that they are against the clear weight of the evidence." *Id.*

¶24    Here, the court considered the testimony of the parties as well as summaries of daycare-expense payments offered by both parties between the entry of the Illinois Divorce Judgment and December 2015. As a starting point, the trial court determined that over this period, the Illinois Divorce Judgment obligated Father to provide $1,000 per month for his share of the children's daycare expenses. Mother testified that she had hired a nanny in 2015 but that she had dismissed that nanny midway through December of that year because she did not need surrogate care for the children. Accordingly, the trial court credited Father with $500 for that month.

¶25    The court next considered the amounts Father actually provided to cover the costs of the children's daycare. Father asserted that he had overpaid during some months but acknowledged that he "didn't pay anything" toward daycare expenses for the last half of August 2015 through the end of that year. After considering the evidence submitted by both parties, the trial court found that Father owed $5,520 in unpaid daycare expenses—the amount Mother asserted remained outstanding. We are not persuaded that the trial court's finding—that Father failed to meet his support obligation for daycare expenses amounting to $5,520—is against the clear weight of the evidence presented at trial.

### III. Father's Unpreserved Issues

¶26    Finally, Father raises two issues that we conclude were not preserved for appellate review. First, he argues that the trial

court erred when it purportedly failed to apply Utah Code section 78B-12-112(4) to fix the date for retroactive application of the modified divorce decree. *See* Utah Code Ann. § 78B-12-112(4) (LexisNexis 2012) (authorizing a court to retroactively modify a support obligation "with respect to any period during which a modification is pending" and requiring that "the effective date of the modification shall be the month following service on the parent whose support is affected"). We conclude that this issue was not preserved in the trial court.

¶27    Father advocated at trial for retroactive application of the modified divorce decree, but he did not argue for the application of section 78B-12-112(4) or contend, as he does now, that the statute required that the divorce decree be modified effective November 1, 2015. Instead, Father cited no authority for his request and argued generally that the court should make the modified decree retroactive to either the date he filed his petition for modification or the date the petition was served.

¶28    On appeal, Father argues that the applicable statute requires the court to apply a date altogether different from the date he advocated for at trial and different from the date ultimately adopted by the court. Because Father did not argue to the trial court that it was required by section 78B-12-112(4) to make the modification retroactive to November 1, 2015, he has not preserved this issue for appeal.[7] *See State v. Johnson*, 2006 UT App 3, ¶ 13, 129 P.3d 282 ("Utah courts require specific objections in order to bring all claimed errors to the trial court's

---

7. Father does not argue that any exceptions to the preservation rule apply. *See State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 ("When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation.").

attention to give the court an opportunity to correct the errors if appropriate." (quotation simplified)).

¶29    Father also argues that the trial court incorrectly interpreted the parties' Illinois Divorce Judgment. Specifically, he asserts that the trial court improperly used Father's 2015 gross income instead of his net income when it calculated his additional child support obligation under the Additur Provision.

¶30    In addition to obligating Father to provide a fixed amount of base support for the children, the Illinois Divorce Judgment obligated Father to provide additional support amounting to "32% of the *net* of all bonuses he received, and 32% of *any income* in excess of" his base salary. (Emphases added.) The trial court determined that, in 2015, Father "earned approximately $10,000 in excess of the [threshold amount]," thus triggering the Additur Provision. It accordingly found Father in contempt for failing to provide this additional child support and determined that he was $3,205 in arrears. Because Father did not challenge the trial court's interpretation of the Illinois Divorce Judgment's Additur Provision as requiring examination of his gross income as opposed to his net income, we conclude that this issue was not preserved and do not consider it further.[8]

IV. Attorney Fees on Appeal

¶31    Each party requests fees incurred on appeal. "Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." *Osguthorpe v. Osguthorpe*, 872 P.2d 1057, 1059 (Utah Ct. App. 1994) (quotation simplified). Because we affirm the trial court's award of attorney fees to Mother below and because she has substantially prevailed on

---

8. Father does not argue an exception to the preservation rule on this claim. *See State v. Johnson*, 2006 UT App 3, ¶ 13, 129 P.3d 282.

appeal, Mother is entitled to the attorney fees she incurred on appeal. We therefore remand to the trial court to determine the amount of attorney fees reasonably incurred in defending this appeal.

CONCLUSION

¶32 Father has not shown that the trial court exceeded its discretion when it determined that Mother substantially prevailed on her motion to enforce the terms of the Illinois Divorce Judgment. The court also acted within its discretion when it fixed the amount of that award, and we discern no clear error in the trial court's factual findings regarding Father's unpaid daycare expense obligations. And Father's other claims are either inadequately briefed or unpreserved. Accordingly, we affirm and award Mother her attorney fees reasonably incurred on appeal. We remand to the trial court for the limited purpose of determining the amount of the award.

_____